UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
FRANCISCO FLORES,                           :
                                                  OPINION & ORDER
                Plaintiff,            :
                                                  15-CV-2903
          -against-                 :

                                 :
THE CITY OF NEW YORK,
                                 :
                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, United States District Judge:

        Plaintiff Francisco Flores brings this federal civil rights action against the City of New York, alleging violations under the Eighth Amendment, Title II of the Americans with Disabilities Act, and § 504 of the Rehabilitation Act. Flores claims that the City was deliberately indifferent to his medical needs during his incarceration at Rikers Island's Anna M. Kross Center ("AMKC"). The City moves for summary judgment. For the following reasons, the City's motion is granted and this action is dismissed.

## BACKGROUND

        Flores was incarcerated at AMKC from June 2013 to August 2015. (See Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1 Stmt."), EFC No. 52, ¶ 1.) Flores, an above-the-knee partial leg amputee, entered AMKC with a prosthesis and was housed on the first floor of the facility for the first ten months of his incarceration. (See Plaintiff's Rule 56.1 Counter-Statement of Undisputed Material Facts ("Pl.'s 56.1 Stmt."), ECF No. 58, ¶ 4.) In late April 2014, he was housed temporarily for several days on AMKC's fourth floor due to flooding on the first floor. (Pl.'s 56.1 Stmt. ¶ 5.) Thereafter, Flores was transferred

back to the first floor and remained there until leaving the City's custody.  (Def.'s 56.1 Stmt. ¶ 6.)

A. **Flores's Medical Treatment at AMKC**

Between his admission to AMKC and the filing of this lawsuit on March 23, 2015, Flores attended forty-eight medical appointments at AMKC, visited sick call twenty times, attended thirty-two mental health therapy or counseling sessions, received twenty-eight appointments regarding his psychiatric medication, and visited the Bellevue Prosthetic Clinic sixteen times.  (Def.'s 56.1 Stmt. ¶ 14.)  The records from these appointments consistently report that Flores was not in acute distress (see Declaration of James M. Dervin ("Dervin Decl."), ECF No. 50, Ex. B at DEF_303, 318, 416, 525, 555, 623, 669, 694) and was generally "well-appearing."  (Dervin Decl., Ex B at DEF_252, 555, 669).

The prosthesis that Flores had when he entered AMKC contained electrical hardware which, when not charged, would lock the device in an extended knee position.  (Def.'s 56.1 Stmt. ¶ 8.)  For security reasons, the City did not allow Flores to charge the battery in his prosthesis and thus it became stuck in a locked position.  (Def.'s 56.1 Stmt. ¶ 10.)  The medical records show that Flores was nonetheless ambulatory, although he walked slowly and with a wide gait.  (Def.'s 56.1 Stmt. ¶ 12.)  The City provided a cane and crutches, which Flores used to walk to the law library and medical clinic at AMKC, as well as chairs with arm support for use in the prison showers.  (Def.'s 56.1 Stmt. ¶ 13; Dervin Decl., Ex. F ¶¶ 15–16.)

Over the course of Flores's many visits to the Bellevue Prosthetic Clinic, specialists fitted him for a new, custom-built prosthetic leg.  During this time, Flores fell in the shower at AMKC and injured his knee.  (Dervin Decl., ExB at DEF_317–18.)  Although he was later diagnosed with a torn meniscus, his doctors saw no significant swelling and noted a normal

range of motion. (Dervin Decl., Ex B at DEF_272.) In March 2015 Flores received his custom-built prosthesis, but was dissatisfied because he wanted one more suitable for running and athletics. (Def.'s 56.1 Stmt. ¶ 39.) Shortly after receiving the prosthesis, Flores reported that it had broken. (Def.'s 56.1 Stmt. ¶ 41.) The specialist who fabricated the device informed AMKC medical staff that the prosthesis did not break as a result of normal usage and appeared to have been tampered with. (Def.'s 56.1 Stmt. ¶ 41.)

  B. **Flores's Housing at AMKC**

Non-ambulatory inmates are typically housed in the North Infirmary Command Annex ("North Infirmary") at AMKC. (Def.'s 56.1 Stmt. ¶ 49.) The decision to place an inmate in North Infirmary is within the exclusive discretion of the AMKC medical staff. (Def.'s 56.1 Stmt. ¶ 50.) Nowhere in Flores's voluminous medical records is there any indication that AMKC medical professionals believed Flores required specialized housing in North Infirmary. (Def.'s 56.1 Stmt. ¶ 51.) Flores contends that he was not transferred to North Infirmary because it was overcrowded. (Dervin Decl., Ex. A at 105:12–20.)

While housed on AMKC's first floor, Flores had access to meals, commissary, recreational facilities, the law library, showers, toilets, and transportation to medical appointments and court appearances. (Dervin Decl., Ex. F ¶¶ 11–14.)

  C. **Flores's Participation in the AMKC Grievance Process**

Flores claims to have filed two grievances related to his housing status. First, he alleges that he submitted a grievance in December 2013 requesting a transfer off of the fourth floor. (See Plaintiff's Exhibits, ECF No. 40, at 20.) Flores did not receive a receipt for this grievance and, although he testified that he followed up with another grievance and a letter to the

warden, he has not submitted copies of any other paperwork in connection with this grievance. (Dervin Decl., Ex. A at 200:3–18; 201:2–4.)

The second grievance was dated March 23, 2015—the same date that Flores signed the Complaint in this action. (Dervin Decl., Ex. C at 24.) In this grievance, Flores complained about his prosthesis and again requested a transfer to North Infirmary. (Dervin Decl., Ex. C at 24–25.) Flores testified that he tried to appeal this grievance by mailing simultaneous letters to the warden and Central Office Review Committee at AMKC. (Dervin Decl., Ex. A at 99:1–100:6.) The City's records indicate that AMKC forwarded this grievance to an ADA specialist on March 31, 2015. (Dervin Decl., Ex. C at 26.)

## LEGAL STANDARD

Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made such a showing, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal citations omitted). On a motion for summary judgment, courts resolve all factual ambiguities and draw all inferences in favor of the non-moving party. See Anderson, 477 U.S. at 255.

When, as here, a party is proceeding pro se, the court has an obligation to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). However, a pro se litigant's "'bald assertion, completely unsupported by evidence' is not sufficient to overcome a motion for summary judgment." D'Attore v. City of New York, No. 10-CV-6466, 2013 WL 1180395, at *3 (S.D.N.Y. Mar. 15, 2013) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

DISCUSSION

The City's primary argument in support of its summary judgment motion is that Flores failed to exhaust his administrative remedies prior to bringing this suit. The Prison Litigation Reform Act ("PLRA") bars an inmate from bringing a civil action relating to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009) (citing Jones v. Bock, 549 U.S. 199, 219 (2007)). "[A] claim must be completely exhausted prior to commencing suit. It is insufficient to take only limited steps towards exhaustion before commencing suit, or even to exhaust a claim entirely during the pendency of a case." Harris v. Gunsett, 2013 WL 3816590, at *4 (S.D.N.Y. July 22, 2013) (internal citations omitted).

Inmates at AMKC are subject to the Inmate Grievance and Request Program ("IGRP"), which Flores acknowledged being "very familiar" with. (Dervin Decl., Ex. A at 198:15.) Under the IGRP, inmates must first file a written grievance using the IGRP Statement Form. (Dervin Decl., Ex. J at 13.) If the inmate does not receive a receipt from the IGRP staff within two business days of submitting the grievance, the inmate must re-submit his IGRP

5

statement form. (Dervin Decl., Ex. J at 15.) The IGRP then reviews the grievance form and proposes an informal resolution. (Dervin Decl., Ex. J at 17–18.) Alternatively, the IGRP may decide that the conditions complained of in the grievance are not subject to the IGRP; in that case, the staff must forward the complaint to the appropriate entity for review and resolution. (Dervin Decl., Ex. J at 6, 18, 36.) Complaints about the conduct of prison medical staff are not subject to the IGRP process. (Dervin Decl., Ex. J at 28, 36.)

If an inmate is dissatisfied with the resolution of a complaint under the IGRP, he must request a formal hearing on the IGRP Disposition Form. (Dervin Decl., Ex. J at 19.) Following a decision at the formal hearing, the inmate may appeal to the facility's commanding officer. (Dervin Decl., Ex. J at 22.) The final step in the IGRP process is an appeal of the commanding officer's decision to the Central Office Review Committee. (Dervin Decl., Ex. J at 24.) The Review Committee's determination constitutes the final decision of the IGRP process, at which point the inmate's administrative remedies are exhausted. (Dervin Decl., Ex. J at 28.)

Flores's first grievance, which he allegedly submitted in December 2013, cannot establish exhaustion because it was not signed by any AMKC official, and Flores neither received a receipt nor submitted any follow-up grievances as required by the IGRP. (See Plaintiff's Exhibits, ECF No. 40, at 20.) Moreover, the grievance's request—that Flores be transferred off the fourth floor due to his broken prosthesis—is plainly contradicted by the fact that Flores was housed on the fourth floor for just a few days in April 2014, months after he allegedly submitted the grievance. (See Pl.'s 56.1 Stmt. ¶ 5; Dervin Decl., Ex. A at 214:13–14.) This lone, unsigned, and factually implausible grievance form is insufficient to show exhaustion of Flores's administrative remedies.

The parties dispute whether the 2015 grievance, which contained complaints about DOC's response to Flores's medical needs, was subject to the IGRP process. The Court need not reach this issue, however, because the 2015 grievance was signed on the same day as the Complaint in this action. As discussed above, grievances not subject to the IGRP are still grievable—the IGRP staff is obligated to forward the complaint to the appropriate entity and provide the inmate with the next steps in the relevant process. (Dervin Decl., Ex. J at 6, 18, 28, 36.) Because a grievance "must be completely exhausted prior to commencing suit," a grievance signed the same day as the related § 1983 action must fail for lack of exhaustion. Harris, 2013 WL 3816590, at *4. Accordingly, the record contains no genuine dispute of material fact as to whether Flores exhausted his administrative remedies prior to bringing this suit.[1]

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted. The Clerk of Court is directed to close all pending motions and mark this case as closed. The Clerk of Court is further directed to mail a copy of this Opinion and Order to the Plaintiff and note service on the docket.

Dated: July 31, 2017
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[1] Nevertheless, while Flores's claim must be dismissed because of his failure to exhaust administrative remedies, it bears noting that shortly after he filed this action this Court scheduled a series of conferences and monitored the City's progress in fabricating a new prosthesis.

7